UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KATHERINE L., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | No. 2:23-cv-00354-JAW |
| ) | |
| MARTIN O'MALLEY, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant ) | |

## REPORT AND RECOMMENDED DECISION

The Plaintiff in this Social Security Disability appeal contends that the Administrative Law Judge (ALJ) erred in concluding that she had no severe gastrointestinal or hand impairments and in assessing her mental limitations. *See* Plaintiff's Brief (ECF No. 11) at 7-16. I agree that the ALJ erred in finding no severe gastrointestinal impairment and, on that basis, recommend that the Court vacate the Commissioner's decision and remand this case for further proceedings consistent with this decision.[1]

### I. Background

After this Court vacated a 2019 decision on the Plaintiff's claim and remanded this case for further proceedings, *see* Record at 2123, a new ALJ found that, from the Plaintiff's alleged onset date of disability, May 16, 2016, through her date last insured for SSD benefits, December 31, 2021, *see id.* at 2127, she (1) had medically

---

[1] I need not and do not reach the Plaintiff's remaining points of error.

1

determinable severe impairments variously characterized as anxiety and post-traumatic stress disorder (PTSD), *see id.*; (2) retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels, carry out more than simple, but less than complex, instructions, tasks, and work duties, and could be in the vicinity of, but have no interaction with, the public, *see id.* at 2132; (3) could perform jobs existing in significant numbers in the national economy, *see id.* at 2143; and (4) therefore was not disabled, *see id.* at 2144-45. The Plaintiff elected not to request review of the ALJ's decision by the Appeals Council, *see* Plaintiff's Brief at 2, making that decision the final determination of the Commissioner as of sixty-one days after the July 14, 2023, date of notice of the unfavorable decision, *see* Record at 2120-22; 20 C.F.R. § 404.984(d).

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by

ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### III. Discussion

The ALJ noted that, beginning in 2017, the Plaintiff had been variously diagnosed with microscopic colitis, lymphocytic colitis, irritable bowel syndrome (IBS), diverticular disease/dyspareunia, and "unspecified diarrhea" and had testified that she had "unpredictable, explosive diarrhea in public places" and "spends 10-20 minutes at a time in the bathroom including cleaning herself and the bathroom." Record at 2129 (cleaned up). She had "complained of up to 10 liquid bowel movements in a day with urgency and episodes of incontinence" but had "no unintentional weight loss and essentially no pain, no blood in stools, and no gas/bloating." *Id*. (cleaned up). Moreover, "[p]hysical examinations of the abdomen ha[d] been normal with normal bowel sounds, no hepatosplenomegaly, or masses." *Id*. (cleaned up).

The ALJ recounted that the Plaintiff had been "treated with Entocort, which reduced her bowel movements from 15 a day to three a day," "[h]er diarrhea reportedly waxes and wanes and has sometimes been more controlled with Lomotil," "[a]t times, she has normal bowel movements," she had "an episode of worsening diarrhea, with 15-16 watery stools per day, but it began several days after returning from a cruise," and the "medication budesonide exacerbated her diarrhea, although it initially improved the condition." *Id*. (cleaned up).

He added that in June 2019, the Plaintiff was advised to stop taking proton pump inhibitors, "as this was thought to be a cause for the diarrhea," she "reported

3

only occasional diarrhea in September 2019," and she was benefitting by October 2019 from a Colestipol regimen, "with only intermittent urgency." *Id.* (cleaned up). He noted that in March 2020 "[h]er medications were adjusted," "by June 2020, [she] admitted that she was doing well on Imodium and Colestipol daily," and she "was doing well overall from a gastrointestinal standpoint by December 2020." *Id.* at 2129-30 (cleaned up).[2]

The ALJ concluded that the Plaintiff's "complaints of diarrhea of varying frequency and intensity have not prevented her from leading an active life and would not preclude work activity." *Id.* at 2129. He explained:

> The [Plaintiff] states that her diarrhea has limited her activities. However, her diarrhea is variable, she has not experienced weight loss, abdominal pain, melena or other symptoms and her activities of daily living appear quite varied, with camping, hiking, vacationing, caring for her grandson, and completing continuing education credits to maintain her social work license. These activities are inconsistent with her assertions of great restriction. Moreover, there is little objective evidence of episodes of incontinence in the record. Due to the variable, intermittent nature of her symptoms, the improvement with medications, the absence of weight loss, abdominal pain, or other objective findings such as ongoing inflammation in the GI tract or laboratory findings including malnutrition, the undersigned finds the [Plaintiff's] diarrhea/IBS/colitis was not severe for the required duration during the period at issue.

*Id.* at 2130 (cleaned up).

The ALJ deemed the 2018 prior administrative findings of agency nonexamining consultants Donald Trumbull, M.D., and Sharon Hogan, M.D., that

---

[2] The Plaintiff points out that this was not the end of her gastrointestinal woes. *See* Plaintiff's Brief at 10. On June 22, 2022—less than six months after the expiration of her date last insured for SSD benefits (December 31, 2021)—she returned to gastroenterologist Catherine H. McCrann, M.D., complaining that she was having "cycles of having 10 loose stools daily" and "couldn't leave the house." Record at 2741. Dr. McCrann assessed "IBS with diarrhea which clearly flares with stress." *Id.*

the Plaintiff had no severe physical impairments "for the most part, persuasive," and a 2019 administrative review by Douglas Chang, M.D., "persuasive because it is consistent with the record, including the independent medical examination findings at Exhibit 29F and 30F, as well as the [Plaintiff]'s very full activities." *Id.* at 2137-38 (cleaned up); *see also id.* at 210-12, 214 (Trumbull findings dated March 27, 2018); 227-28, 230 (Hogan findings dated October 4, 2018), 1283-84 (Chang review dated January 25, 2019).

The Plaintiff contends that the ALJ erred in relying on the opinions of experts who "saw limited medical records which they interpreted to show a condition that had resolved" when "later records revealed diarrhea to be an ongoing problem that evolved and worsened, causing significant distress and limitations." Plaintiff's Reply Brief (ECF No. 14) at 3; *see also* Plaintiff's Brief at 13-16. The Commissioner counters that this amounts to an unavailing invitation to the Court to reweigh the evidence because, "[a]t best, the record contains conflicting evidence related to the frequency of Plaintiff's diarrhea" that the ALJ "properly considered" and "resolved." Commissioner's Brief (ECF No. 13) at 1-2, 7.

The Plaintiff has the better argument. Drs. Trumbull, Hogan, and Chang did not have the benefit of review of the more ramified longitudinal evidence bearing on the Plaintiff's diarrhea/IBS/colitis. Dr. Trumbull cited an April 20, 2017, record noting "new persistent diarrhea w[ith] recent travel," records of colonoscopies for lymphocytic colitis on May 17, 2017, and September 11, 2017, a July 19, 2017, finding of normal bowel sounds with no masses or hernia noted, and an October 11, 2017,

5

finding of a soft, nontender, nondistended abdomen. Record at 210-11. Dr. Hogan explained that, although the Plaintiff had reported that "colitis limits [her] ability to work," the medical evidence of record "states [she] has only episodic diarrhea which is treated with OTC [over-the-counter medications]." *Id.* at 230. Dr. Chang noted that "[n]o new medical evidence [had been] provided." *Id.* at 1283-84.[3]

As the ALJ acknowledged, the Plaintiff continued for months after October 2017 to seek medical help in controlling her diarrhea, including obtaining care from two gastroenterologists and trialing prescription medications, and did not report until June 2020 that she was "doing well on Imodium and Colestipol daily." *Id.* at 2129-30.[4] Drs. Trumbull, Hogan, and Chang lacked the benefit of review of these material later-submitted records, undermining the ALJ's reliance on their findings. *See, e.g., Kimberly C. v. Kijakazi*, No. 1:22-cv-00313-LEW, 2023 WL 5740444, at *3 (D. Me. Sept. 6, 2023) (rec. dec.) (holding that an ALJ erred in relying on an agency nonexamining consultant's finding that a claimant had nonsevere fecal incontinence when, "in the years following the record review," the claimant "reported continuing, even if somewhat periodic, fecal incontinence issues" and her primary care provider noted that she was "having more incontinence" after an implanted sacral nerve stimulator failed (cleaned up)), *aff'd*, 2023 WL 6261022 (D. Me. Sept. 26, 2023).[5]

---

[3] As noted above, the ALJ cited Exhibits 29F and 30F for the proposition that the Chang opinion was consistent with the record. *See* Record at 2138. However, those records, which date from 2016, do not address the Plaintiff's diarrhea/IBS/colitis issues. *See id.* at 2027-40.

[4] At least two of the medications that the ALJ noted the Plaintiff took for her diarrhea/IBS/colitis, budesonide and colestipol, *see* Record at 2129-30, are available by prescription only, *see* https://medlineplus.gov/druginfo/meds/a608007.html (last visited July 15, 2024); https://medlineplus.gov/druginfo/meds/a682157.html (last visited July 15, 2024).

[5] Indeed, the ALJ himself seemingly did not find the Plaintiff's diarrhea/IBS/colitis issues nonsevere but, rather, "not severe *for the required duration* during the period at issue." Record at 2130 (emphasis

The error is not harmless. To show harmful error, "a claimant need only show that there is a reasonable probability . . . that the outcome would be different upon remand." *Robert S. v. Kijakazi*, No. 2:22-cv-00129-LEW, at *2 n.1 (D. Me. Jan. 26, 2023) (rec. dec.) (cleaned up), *aff'd*, 2023 WL 1992637 (D. Me. Feb, 14, 2023). *See also, e.g.*, *Brackett v. Astrue*, No. 2:10-cv-24-DBH, 2010 WL 5467254, at *4-7 (D. Me. Dec. 29, 2010) (rec. dec.) (holding that a claimant had shown harmful error at Step 2 by pointing to evidence unseen by the agency nonexamining consultant on whose opinion the ALJ had relied because the unseen evidence contained new diagnoses and suggested serious occupational impairments), *aff'd*, 2011 WL 177134 (D. Me. Jan. 19, 2011).

The Plaintiff posits that the record as a whole *could* support a finding of a severe diarrhea/IBS/colitis impairment requiring proximity to a bathroom and causing time off task or absences from work that could be work-preclusive. *See* Plaintiff's Brief at 11. I agree. The ALJ deemed the Plaintiff capable of performing three unskilled jobs. *See* Record at 2143-44, 2191-92. As the Plaintiff notes, *see* Plaintiff's Brief at 11, the vocational expert present at her post-remand hearing testified that an absence of more than one day a month, or time off task totaling more

---

added). Yet, "[a] condition need not be 'severe' or symptomatic day in and day out for twelve straight months to meet the durational requirement." *Greene v. Barnhart*, No. 03-36-B-W, 2003 WL 22961199, at *4 (D. Me. Dec. 15, 2003) (rec. dec.), *aff'd*, 2004 WL 51102 (D. Me. Jan. 9, 2004).

than ten percent of a workday, would not be tolerated in unskilled work, *see id*. at 2192-93.

Because the ALJ relied on the findings of agency nonexamining consultants who did not have the benefit of review of later-submitted records "contain[ing] new diagnoses and suggest[ing] serious occupational impairments," *Brackett*, 2010 WL 5467254, at *4-7, his conclusion that the Plaintiff had no severe diarrhea/IBS/colitis impairment is unsupported by substantial evidence, requiring remand.

## IV.  Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent with this decision.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.*

Dated: July 31, 2024

/s/ Karen Frink Wolf
United States Magistrate Judge